Lessee of JENKS *against* BACKHOUSE.

UPON the trial of this ejectment before *Shippen* C. J. and *Smith* J. at a Circuit Court for *Bucks* in *May* 1802, the plaintiff shewed a regular title to the premises in question, being part of a large patent, in *Lawrence Growdon*, who by his will devised the residue of his estate, including the lands in controversy, to his two daughters *Grace* and *Elizabeth. Elizabeth* and *Thomas Nicholson* her husband, and *Grace* and *Joseph Galloway* her husband, who in his own right was entitled to one

A trust
estate in
Pennsylva-
nia descends
in case of in-
testacy, to
the heir at
common law.

1803.

Lessee of
Jenks
v.
Back-
house.

twenty-fourth of the patent, executed a deed of partition, and allotted and granted the premises in question by certain numbers, to *Joseph Galloway and Grace his wife and to the heirs of Grace;* certain other numbers to *Nicholson* and his wife, and certain other numbers to *Joseph Galloway* and his heirs. The deed was duly acknowledged. At the time of the partition *Galloway* and wife had issue *Elizabeth. Galloway* was afterwards attainted of treason, and removed from *Pennsylvania* to *Great Britain,* where at the time of trial he remained in full life. After his attainder and departure, his wife died in *Pennsylvania,* having by her will devised the premises to *Abel James,* from whom they came to *Thomas Jenks,* in trust for *Elizabeth Galloway* the daughter and her heirs. *Thomas Jenks* died intestate

*Fox's* Martyrology, that one *Greenwood* for his perjuries and crimes had been killed by the hand of God. *Greenwood* was in church at the time, and afterwards brought an action for the words. But the clergyman pleaded not guilty, and it was held the action would *not lie,* by reason of the *occasion of publishing the words.* (The case of *Kennedy* v. *Gregory* was not in court, and therefore was not noticed.)

Tilghman C. J. This point is not new to me, it has occurred on the circuit and been considered though not absolutely decided by me. The effect of any evidence which a defendant may offer is with the jury; the competency of it, with the court. The question in this case is, whether the defendant is entitled to offer to the jury this letter, with the explanations, for any legal purpose connected with the cause. It certainly cannot be offered to prove the plea of *not guilty;* and it is no legal *justification.* But still, is it not material? Can it be, that like damages should be given against two defendants, one of whom received his information from such sources as were entitled to a certain degree of credit, while the other devised it by his own wicked imagination? I think it cannot. Such evidence certainly goes to the degree of malice, and must weigh with the jury according to the circumstances which attend it. Whether these circumstances are such as ought in reason to mitigate the damages, they will decide. In the case of *Williams* and wife v. *Mayer* and wife, (Circuit Court, *Mifflin* county, *May* 1806) I expressed the inclination of my mind, that the defendants who were sued for slander in charging the plaintiffs with felony, might on *general principles* give evidence of circumstances which had induced a suspicion of felony; although in that case the evidence was clearly admissible by way of rebutting something which had been proved, in order to aggravate the damages, by the plaintiffs, and therefore the *general point* was not decided. Since that I have observed in 2 *Peak's Comp. of Evid.* 287. it is said to have been ruled by *Eyre* C. J. in the case of *Knobel* v *Fuller,* that the defendant may in mitigation of damages prove, on the general issue, such facts and circumstances as shew a ground of suspicion not amounting to actual proof of the plaintiff's guilt. I adhere to the opinion which I had formed in the case of *Williams* v. *Mayer,* and admit the evidence.

leaving six children; but the lessor of the plaintiff was his oldest son, and heir at common law. The defendant derived his title under the agents of forfeited estates, who upon the attainder of *Galloway*, sold the premises for his life, supposing him to be so entitled as tenant by the curtesy; but this court having decided (a) that by his attainder the estate of Mrs. *Galloway* was discharged of the curtesy, this ground was not taken by the defendant. He however resisted the plaintiff's claim upon two other grounds: First, That in *Pennsylvania* a trust did not descend to the heir at common law, but to all the brothers and sisters under the intestate laws; and that therefore the recovery could be but for one sixth at most. Secondly, That the deed of partition conveyed a life estate to *Galloway*.

1803.

Lessee of JENKS *v.* BACK-HOUSE.

A verdict was taken for the plaintiff generally, subject to the opinion of this court upon two points reserved, which were the defendant's two objections; and they were now argued by *Hopkinson* and *Tilghman* for the plaintiff, and by *Ross* and the *Attorney general* for the defendant.

For the plaintiff it was contended on the *first* point, that a trust descends in *Pennsylvania* as it does in *England*, and is not contemplated in any of the provisions of the intestate law. They relate exclusively to the beneficial estate. The acts of Assembly which govern this case give the eldest son two shares, the widow her third or moiety, the other children their respective portions; in certain cases they order a valuation, and what is a striking feature, they expose the whole of the intestate's estate, which is in any manner the object of the law, to the payment of his debts. 1 *St. Laws App.* 44. 47. It is impossible that a mere trust should be embraced by such provisions. The acts of Assembly are to be construed like a will, in which a general devise of all a testator's estate does not pass a trust. *Attorney general* v. *Buller.* (b) Neither will a general assignment by a bankrupt pass a debt due to him as trustee. *Winch* v. *Keeley.* (c) The argument *ab inconvenienti* in our case is very strong; and our judicial decisions recognise the heir at law for various purposes not within the intestate law;

(a) *Lessee of Pemberton* v. *Hicks, ante* 1.
(b) 5 *Vez. jr.* 339.                    (c) 1 *D. & E.* 619.

1803.

Lessee of
JENKS
*v.*
BACK-
HOUSE.

as in the case of an estate tail, where the oldest son has been adjudged to take.

*Second point.* The intention of the parties was to keep their rights upon the old footing, and merely to sever the possession; though whatever was their intention, they had no capacity to limit by that deed any estate which was not in existence before. Who were the parties that granted to *Galloway* and his wife? *Thomas Nicholson* and wife, who certainly could not give *Galloway* an estate in his wife's lands. It s contrary to the nature of a partition either by writ or deed to alter the estate of the parties; they all continue to be in of their old estate. *Co. Litt.* 169. *b.* 177. *b.*

For the defendant. *First point.* The intestate laws include within their provisions all legal estates; and if there be an inconvenience, it is for the legislature to remedy it. Its falling into many hands is no objection; for even in *England* it descends to coparceners, and the children of a coparcener, *Co. Litt.* 163. *b.*, and to brothers in gavelkind, where all the inconveniences suggested may arise. Indeed the opposite argument allows that if all *Jenks's* children were females, they would take the trust among them. The legislature knew that trusts were in existence, and they have used general words. But. it is said general words in a will do not pass a trust; this has been *vexata quæstio*, and in the case of *Marlow* v. *Smith* (a) the direct contrary was decided. The reason why a bankrupt's assignment does not pass a debt owing to him as trustee, is because the statute 1 *Jac.* 1. *c.* 15. only says that such debts are to be assigned as are *for the benefit* of the bankrupt. As to an estate tail, whatever may have been the decision, it does not apply. A man cannot be said to die intestate of that which he has no power to devise. The heir at common law takes *per formam doni* as the person named.

*Second point.* The intention of the parties is to govern; but it must be collected from the deed, which explicitly allots and grants an estate for life to *Joseph Galloway.* The only question is as to their power, which hardly admits of doubt, since the wife was a party and acknowledged the deed. She certainly may join her husband in conveying her estate to a third person.

(a) 2 *P. Wms.* 198

and may limit it by use to her husband and herself for life, with remainder to her right heirs; and this is the same thing.

Reply. A trust will certainly descend to parceners, not because the intestate law has so ordered it, but because they form together but one heir. *Co. Litt.* 163. *b.* But although the equitable estate goes to all the sons in gavelkind, the trust does not, nor to the youngest son in borough-english; the heir at law must always enter for a condition broken. *Wellock* v. *Hammond.* (*a*)

YEATES J. delivered the opinion of the court.

The first point reserved is whether the trust descended by the intestate laws of this state to the six children of *Thomas Jenks* deceased, or to the lessor of the plaintiff, his oldest son and heir at the common law.

However general the words of our intestate act may be, it cannot be asserted that the legislature contemplated trust estates as governable thereby. None of the provisions which have been made by our municipal laws, seem applicable to interests purely legal. To speak of a widow having dower in lands vested in her husband on special trust and confidence, without any beneficial interest in him, but for express specified purposes; or of children succeeding to the reversion of one moiety thereof after her death; or making partition thereof, or in case the same cannot be divided without prejudice to or spoiling of the whole, proceeding to a valuation; or selling the same for payment of debts and maintenance of minor children, in defect of personal estate in the decedent; and a variety of other cases which may be put, would sound very harshly in the ears of a lawyer, and be deemed solecisms.

We cannot make laws, but we are bound faithfully to interpret them according to their true intention, and must never suppose that the legislature have been guilty of palpable absurdities, where their public acts are susceptible of a rational construction. The division of a fiduciary interest into many parts in different proportions, and vesting it thus split up, in many instances in minors, incapable of discharging the functions of the trust, would be attended with many inconveniences. The

adverse doctrine does not impair the principle of equality among the children of a common parent, adopted by the policy of our laws. In the case of an estate tail after the death of the tenant in tail, it has been determined at *York* Nisi Prius that his heir at common law shall take the lands thus intailed. He claims, it is said, through his ancestor *per formam doni;* yet as to the purpose of taking he is considered as the heir of the father. The strong ground of the decision I take to have been, that it had been the uniform received opinion of the profession, that such a case was not within the true spirit of the intestate acts, that many estates have been held under it, and that it would be highly dangerous at this time to impeach the doctrine. This argument holds in all its force in the present instance. From the best inquiry we have been able to make, and concurring as we do, that the vesting of a trust by the rules of descent at common law will best answer the ends of its creation, that our intestate acts only respect *beneficial* and not *confidential* interests, and that the application of them to trusts would produce many difficulties and mischiefs, we feel no difficulty in declaring that the trust in this instance became vested in the eldest son of *Thomas Jenks* the trustee.

On the second point we have no doubt. We do not think it was the intention of the parties to the partition, to vest *Joseph Galloway* with any other interest in the land than he had previous thereto. He was tenant by the curtesy initiate of an undivided right, and the only object of the deed appears to be that they should hold the right in severalty. Indeed it has been truly said that it was not competent to the parties to extend his interest in the lands.

On the whole we conclude that judgment should be entered for the plaintiff for the whole of the lands recovered by the verdict.

                                        Judgment for Plaintiff.