St. Stephen's Evangelical Lutheran Church,

vs.

William T. Pierce.

*New Castle, Sept. T.* 1897.

Where in a deed of lands, in the description of the parties, the grantee
  is described as "The Penn Loan Association," a corporation, and
  the consideration is expressed to have been paid by the corpora-
  tion, but in the premises, and the *habendum*, the grantee is de-
  scribed as the "President of the Penn Loan Association, and to
  its successors and assigns," the conveyance will be treated as
  having been made to the president as a trustee for the corpora-
  tion, and on bill filed by the grantee of the corporation, through
  sundry *mesne* conveyances, a conveyance will be decreed from
  the eldest son and heir at common law of the president of the
  Corporation.

When a deed was so inartificially drafted as to create a possible doubt
  whether the title under it was vested in a corporation or in its
  president, in trust for the corporation, a conveyance will be de-
  creed, from the common law heir of the president, to remove the
  cloud on the title.

Real estate held in trust descends to the eldest male heir at common
  law of the trustee.

BILL TO REMOVE A CLOUD ON A TITLE.—The complain-
ant, a corporation of the State of Delaware, was the owner of
land situate in Wilmington, to which it had taken title under
several indentures recited in the bill as follows:

(1) Indenture dated May 4, 1872, and recorded in New
Castle County in Deed Record W, Vol. 11, page 297, from
Matthew J. Draper, and Susan Draper, his wife, to the Penn
Loan Association, a corporation of the this State.

(2) Indenture dated March 27, 1879, and recorded in
New Castle County in Deed Record I, Vol. 11, page 450, from

the Penn Loan Association to John H. Turner and Thomas Mullan.

(3) Indenture dated September 14, 1881, and recorded in New Castle County in Deed Record B, Vol. 12, page 108, from John H. Turner and Emeline, his wife, and Thomas Mullan and Rebecca, his wife, to the Household of Faith, a religious corporation existing under the laws of this State.

(4) Indenture dated March 22, 1888, and recorded in New Castle County in Deed Record F, Vol. 14, page 191, from the said Household of Faith to the Perpetual Savings and Loan Association, a corporation of this State.

(5) Indenture dated July 8, 1889, and recorded in New Castle County in Deed Record S, Vol. 14, page 7, from the said Perpetual Savings and Loan Association to the complainant.

It was further alleged that the first of said indentures, though intended to convey the said premises to the Penn Loan Association, was so drawn by the conveyancer as to raise a doubt with respect to the title taken thereunder by the Penn Loan Association and its assigns. The parties are described as Matthew J. Draper, (colored) of the City of Wilmington, New Castle County and State of Delaware, and Susan, his wife, parties of the first part, and the Penn Loan Association, a corporation of the State of Delaware, party of the second part.

The consideration is mentioned as the sum of nine hundred and fifty dollars lawful money, &c., paid "by the said Penn Loan Association," which is also the convenantee in the special warranty, and mentioned as the party from whom the consideration was received in the receipt following the deed.

In the premises of said indenture the property was conveyed and granted "to the said President of the Penn Loan Association and to its successors and assigns."

The *habendum* was "unto the said the President of the Penn Loan Association, or successors and assigns, to and for the only proper use and behoof of the said the President of

the Penn Loan Association, or successors, heirs and assigns forever."

The bill further alleged that the consideration was, in fact, paid by the Penn Loan Association; that it afterwards conveyed the property by the second deed above recited; and that the said Association and its assigns have held undisputed and adverse possession of the property from May 4, 1872, until the present time, a period of more than twenty-five years. It is alleged that the title or interest in said property, if any, that has accrued to the defendant has been solely by reason of the mistake of the conveyancer who drew the said first mentioned deed, and that because of said mistake some doubt has arisen as to the true construction and effect of said Indenture, which doubt tends to cast a cloud or imperfection which the complainant is desirous to have aided, cured and removed.

The bill further states that on May 4, 1872, one William H. Pierce was president of the said Penn Loan Association and that in him was vested any title which under said deed passed to the "President of the Penn Loan Association."

William H. Pierce died June 18, 1880, intestate, leaving to survive him as heir at common law the defendant, to whom, it was claimed, under the laws of this State, the title to said property of his father did descend and come.

The complainant prayed for the construction of the deed in which Draper and his wife were grantors, and that it might be decreed that there was thereby vested in William H. Pierce the naked legal title in trust only for the said Penn Loan Association, the grantee's name being inserted by mistake.

The bill further prayed that the defendant, as the son and eldest male heir at law of William H. Pierce might be decreed to make, execute and deliver to the complainant a deed conveying the said property freed and discharged from any trusts.

The other prayers are for answer, further relief and subpoena.

The bill was filed November 4, 1897, and on the twentieth of the same month the defendant filed his answer admitting all the allegations of the bill and tendering himself ready and willing to execute and deliver such conveyances as the Court might order and direct.

The complainant elected to go to a hearing on bill and answer.

*William F. Kurtz*, for complainant.

*T. B. Heisel*, for respondent.

The Chancellor was of opinion that the deed from Matthew J. Draper and wife, dated May 4, 1872, was intended to be a conveyance to the Penn Loan Association for its own use and behoof, although the actual language seemed to make William H. Pierce, as president of the corporation, the actual grantee and nominal *cestui que use*, but if he were to be considered as the grantee, he was such only as a trustee for the Association, and his title was a mere naked legal title, so that upon proper application, a conveyance from him, or after his death, from his heir, should be decreed.

He considered that even if it were doubtful whether the corporation, or its president, took the legal title under the deed, there could be no doubt that the former took the beneficial interest; and that the inartificial character of the deed was such as to present a fair case of cloud upon the title and to warrant a court of equity, upon proper application to it, in decreeing a conveyance to the present holder of the legal title, from the person or persons in whom any interest had legally vested.

He also considered that it is the settled law of this State that the statute of descents does not control the devolution of trust estates, and that the legal title to lands held in trust, descends to the eldest male heir at common law of a deceased trustee.

A decree was accordingly entered November 20, 1897, directing the conveyance by the respondent, as the heir at common law of his father, William H. Pierce, to the complainant, in order to vest in it such interest in the property

Note.

in question, if any, as his father may have taken under the deed from Draper and wife.

NOTE. That the statute of descents does not control the devolution of trust estates, as decided in this case, was also decided by the Superior Court in *Doe dem. McMullin, et al. vs. Lank*, 4 *Houst.* 648. In that case the plaintiffs were the heirs at law generally of a deceased trustee. Judge Gray, then at the Bar and representing the respondent, objected that the suit could not be maintained by the plaintiffs, who were the heirs generally of Samuel McMullin, the deceased trustee, but should have been brought in the name of his eldest male heir alone.

The late Judge Whiteley, who was of counsel for the plaintiffs, admitted that such was the rule of succession and the principle of the common law in cases of trusts, and that the action had been improperly brought in the name of the heirs generally of the trustee.

Another objection had been made by Judge Gray to the maintenance of the action, growing out of the character of the trusts, he contending that it was a dry or passive trust and that there was nothing for the trustee to do but convey the legal estate.

The Court held that both objections were fatal to the action, and that the one last stated was also fatal to the right of the eldest male heir to recover in a similar action brought in his name alone.

The principle that the trust estate descended to the eldest male heir was thus admitted by counsel on both sides and sustained by the Court without dissent.

No case in this Court appears to have been hitherto reported, but there can be no doubt that the rule of the descent of a trust in lands to the common law heir has been assumed by the Bench and Bar to prevail in this State. There is an unreported case in this Court in which an order or decree was entered, for a conveyance by the eldest son of a deceased trustee, by Chancellor Saulsbury in 1876, and, in order to show the previous adoption of this rule in both Courts of First Instance in this State, it may properly be here briefly stated from the Record.

IN THE MATTER OF DEBORAH C. M. WELDIN. PETITION FOR THE APPOINTMENT OF TRUSTEE AND FOR CONVEYANCE TO HIM. It appeared from the petition filed, that Samuel Baily and wife had conveyed to Robert R. Porter, by deed dated March 4, 1861, certain lands and premises situate on the east side of King street, between 7th and 8th Streets, in the City of Wilmington. The conveyance was upon certain trusts for the benefit of Deborah C. M. Weldin. The powers of the trustee included authority to sell the property and hold the proceeds in trust for the same purposes.

Note.

The trustee, Robert R. Porter, died in the month of April, 1876, and, as the petition sets forth, "leaving to survive him as his only son and heir at common law the said Willard Hall Porter, to whom the said trustee estate did descend and come."

The petition further alleged that there was no person authorized to execute the trusts and that the deed, under which the trusts were created, contained no provision for supplying the place of a deceased trustee. The prayer of the petition was "that Daniel M. Bates may be appointed trustee in lieu of the said Robert R. Porter, deceased, and that an order may be made for the conveyance by the said Willard Hall Porter of the legal estate in said trust property to the trustee so to be appointed."

The petition was filed by Deborah C. M. Weldin, the *cestui que trust* and with her was joined Willard Hall Porter, the common law heir of the deceased trustee. The joining in the petition of the person in whom is vested the legal title to the trust estate was prudently followed in this case, because it dispenses with the necessity of issuing a rule to show cause and brings into Court *in limine* the person against whom the order for conveyance must issue.

The case came before the Chancellor at Chambers on July 18, 1876.

*Geo. H. Bates*, for the petitioner, asked for the appointment of a new trustee and for a conveyance to the said new trustee, after his qualification as such, of the premises in question.

He contended that the settled law and practice in this State was that such conveyance should be made by the common law heir of the deceased trustee, and that our statute of descents did not apply to trust estates. He cited *Doe dem. McMullin, et al. vs. Lank*, 4 *Houst.* 648 and *Lessee of Jenks vs. Backhouse*, 1 *Binn.* 91.

The Chancellor entered an order appointing Daniel M. Bates trustee of the lands and premises in the deed recited in the petition in the stead of Robert R. Porter, deceased. He directed that a bond for six thousand dollars be taken. The order concluded, as follows:

"And it is further ordered that Willard Hall Porter, one of said parties being the only son and heir at common law of the said Robert R. Porter, deceased, to whom the said trust estate has descended, do immediately execute a deed of conveyance (to be paid for out of the said trust fund) granting and conveying unto the said Daniel M. Bates all the said lands and premises composing the said trust estate to hold the same upon the same trusts as in the deed creating the said trusts are limited and set forth."

This case was decided by Chancellor Saulsbury upon the authority of the case above cited from 4 *Houston* and of the case of *Lessee* of *Jenks vs. Backhouse*, 1 *Binn.* 91, the reasoning of which last case he adopted fully without writing an opinion. In that case the point was

Note.

reserved whether a trust estate descended by the intestate laws to the six children of the deceased trustee, or to the lessee of the plaintiff, his eldest son and heir at common law.

Yeates, J., in delivering the opinion of the Court, said:

"However general the words of our intestate act may be, it cannot be asserted that the Legislature contemplated trust estates as governable thereby. None of the provisions which have been made by our municipal laws, seem applicable to interests purely legal. To speak of a widow having dower in lands vested in her husband on special trust and confidence, without any beneficial interest in him, but for express specified purposes; or of children succeeding to the reversion of one moiety thereof after her death; or making partition thereof, or in case the same cannot be divided without prejudice to or spoiling of the whole, proceeding to a valuation; or selling the same for payment of debts and maintenance of minor children, in defect of personal estate in the decedent; and a variety of other cases which may be put, would sound very harshly in the ears of a lawyer, and be deemed solecisms.

"We cannot make laws, but we are bound faithfully to interpret them according to their true intention, and must never suppose that the Legislature have been guilty of palpable absurdities, where their public acts are susceptible of a rational construction. The division of a fiduciary interest into many parts in different proportions, and vesting it thus split up, in many instances in minors, incapable of discharging the functions of the trust, would be attended with many inconveniences. The adverse doctrine does not impair the principle of equality among the children of a common parent, adopted by the policy of our laws. In the case of an estate tail after the death of the tenant in tail, it has been determined at York *Nisi Prius* that his heir at common law shall take the lands thus intailed. He claims, it is said, through his ancestor *per formam doni;* yet, as to the purpose of taking, he is considered as the heir of the father. The strong ground of the decision I take to have been, that it had been the uniform received opinion of the profession, that such a case was not within the true spirit of the intestate acts, that many estates have been held under it, and that it would be highly dangerous at this time to impeach the doctrine. This agrument holds in all its force in the present instance. From the best inquiry we have been able to make, and concurring as we do, that the vesting of a trust by the rules of descent at common law will best answer the ends of its creation, that our intestate acts only respect beneficial and not confidential interests, and that the application of them to trusts would produce many difficulties and mischiefs, we feel no difficulty in declaring that the trust in this instance became vested in the eldest son of Thomas Jenks the trustee."

The same law has been recognized in other states. *Duffy vs. Calvert*, 6 *Gill* 487; *Zabriskie vs. Morris & Essex R. R. Co.*, 33 *N. J. Eq.* 22; *Wills vs. Cooper*, 1 *Dutch.* 137; *Boston Franklinite Co. vs. Condit*, 19 *N. J. Eq.* 394; *Reynolds vs. Reynolds*, 61 *S. C.* 250; *Cone vs. Cone, id.* 512.